UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMYLYNN M. JENSEN,

        Plaintiff,

  v.

        Case No. 21-cv-0413

KILOLO KIJAKAZI, Acting Commissioner of
Social Security Administration,

        Defendant.

## ORDER AND DECISION

Amylynn Jensen seeks reversal and remand of the Acting Commissioner of Social Security's decision denying her claim for Disability Insurance Benefits (DIB). For the reasons set forth below, the Acting Commissioner's decision will be affirmed.

### PROCEDURAL BACKGROUND

Jensen applied for DIB on May 7, 2019 alleging a disability onset date of January 11, 2019. (ECF No. 14-6 at 2.) Jensen's application was denied initially and on reconsideration and she requested a hearing before an ALJ. (ECF No 14-5 at 2, 7, 12.) A hearing was held on August 12, 2020, and the ALJ issued an unfavorable opinion on September 25, 2020. (ECF No. 14-3 at 14, 25.) Jensen requested review and on February 21, 2021, the Appeals Council denied review. (ECF No. 17 at 2.) This appeal followed. (*Id*.)

### FACTUAL BACKGROUND

On January 11, 2019, Jensen went to the emergency room with complaints that her right leg was dragging, mild right arm weakness and she needed support to walk. (ECF No. 14-13 at 17.) Jensen had suffered a stroke at the age of 50. (ECF No. 17 at 1.) An MRI of her brain showed 1.5 cm of restricted diffusion involving the left cerebral peduncle as well as 1.4 cm area of hyperintensity in the right corona radiate likely a subacute infarct. (ECF No. 14-9 at 99.) Jensen was hospitalized until January 17, 2019 and transferred to inpatient rehabilitation. (ECF No. 17 at 3.) On discharge from inpatient rehabilitation, Jensen's right-sided strength was substantially

improved to 4+ to 5/5 and she exhibited occasional hesitancy of speech. (ECF No. 14-13 at 66.) Jensen began outpatient physical therapy on February 15, 2019, continuing through July of 2019. (ECF No. 17 at 3.) In August of 2019, Jensen was diagnosed with breast cancer, and on October 1, 2019, she underwent a mastectomy of her right breast. (*Id.* at 5.)

The ALJ found Jensen not disabled at step two of the agency's sequential evaluation process based on the absence of a severe impairment as of Jensen's date last insured. (ECF No. 14-3 at 16-17.) The ALJ also concluded that even if Jensen had a severe impairment, she had the residual functional capacity to perform work that existed in significant numbers in the national economy. (*Id.* at 24-25.)

## LEGAL STANDARD

The Acting Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported [her] decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). The Supreme Court has instructed that "the threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to [her] conclusion, but [she] need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citation omitted). That said, an ALJ is not permitted to simply ignore contradictory evidence. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

In reviewing the entire record, this Court "does not substitute its judgment for that of the [Acting] Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

## ANALYSIS

Jensen contends that remand is required because the ALJ ignored evidence of Jensen's gait impairment and overstated her degree of post-stroke improvement. Jensen argues that substantial evidence does not support the ALJ's decision, including the step two finding, the alternate RFC determination and step five finding, the ALJ's subjective symptoms assessment, and the ALJ's

evaluation of the opinion evidence. Because the ALJ supported her decision with substantial evidence, Jensen's challenges fail, and the Acting Commissioner's decision will be affirmed.

**I.      The ALJ's Determination at Step 2 is Based on Substantial Evidence.**

Jensen is entitled to DIB if she was "under a disability" within the meaning of the Social Security Act by the date her insured status expired. 20 C.F.R. §404.131(a), §404.320(b)(2); *Perkins v. Chater*, 107 F.3d 1290, 1295 (7th Cir. 1997). Jensen acknowledges that her insured status expired on March 31, 2019. (ECF No. 17 at 1.) Consequently, Jensen had to show disabling symptoms during the relevant period of January 11, 2019 (the alleged onset date) through March 31, 2019. Whether Jensen became disabled after that date is immaterial to this case. *See Schloesser v. Berryhill,* 870 F.3d 712, 717 (7th Cir. 2017) ("[I]n our review of the [ALJ's] decision, we consider only [the] finding that [the claimant] was not disabled as of his date last insured, not [the claimant's] argument on appeal that he is currently disabled."). Jensen's disabling impairment also had to continue for a twelve-month period. *See* 20 C.F.R. §404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months . . . the duration requirement".). If Jensen actually began to experience disabling symptoms on January 11, 2019, she would also need to show that her disabling impairment continued through January 11, 2020.

The ALJ evaluated Jensen's claim for DIB under the mandatory five-step sequential analysis. See 20 C.F.R. §404.1520(a)(4). At step one, the ALJ found that Jensen had not engaged in substantial gainful activity from January 11, 2019 through March 31, 2019 (the relevant period). (ECF No. 14-3 at 16.) At step two, the ALJ found that Jensen did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months. (*Id.* at 16-17.) The ALJ therefore found Jensen was not disabled. See 20 C.F.R. §404.1520(c) (a claimant is not disabled if she has no severe impairment). A finding of not disabled at step two normally ends the sequential disability evaluation process. 20 C.F.R. §4041520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). The ALJ, however, made alternative findings at the other steps as alternative grounds for the decision; those grounds will be discussed later in this decision.

Step two is "merely a threshold requirement." *Curvin v. Colvin*, 778 F.3d 645, 648 (7th Cir. 2015) (citation omitted). "Other circuits have described the Step 2 inquiry as a *de minimis*

screening for groundless claims." *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016) (citation omitted). Even if an impairment is found to be "severe" at step two, the impairment must also meet the duration requirement set forth at 20 C.F.R. §404.1509 before proceeding to subsequent steps. *See* 20 C.F.R. §404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement, . . . we will find that you are not disabled.").

The ALJ found that Jensen "improved within six months of her cardiac/cerebrovascular episodes," "recovered well," and had a "good response to treatment with good physical and cognitive function on examination and reasonably good return to her daily activities." (ECF No. 14-3 at 19-20, 22.) Jensen acknowledges that she "undoubtedly improved" but argues that the ALJ omitted objective evidence "showing Jensen's post-stoke gait abnormalities continued despite improvement." (ECF No. 17 at 9, 11.) In support of her conclusion, the ALJ cited the following medical evidence. On May 31, 2019, examination notes documented "[o]ngoing improvement in [Jensen's] functional mobility and right upper/lower extremity strength since last appointment." (ECF No. 14-12 at 13.) Jensen was ambulating without an assistive device within her home and in the community, however, she used a cane when traveling up and down stairs that did not have a railing. (*Id.* at 12.) Jensen had normal range of motion of all joints except for partially decreased range of motion of her right shoulder, and a cautious gait. (*Id.* at 12-13.) Jensen's right foot clearance and dorsiflexion were improved and she demonstrated "improved equinovarus foot positioning." (*Id.* at 13.)

On July 23, 2019, Jensen's physician, Brian A. Knapp, M.D, released Jensen back to work "on or after August 15, 2019 *without restrictions*." (ECF No. 14-12 at 33) (emphasis added.) Within that same notation releasing Jensen back to work without restrictions, Dr. Knapp noted Jensen's equinovarus gait on right. (*Id.*) During July and August examinations, Jensen demonstrated full strength in upper and lower extremities, normal range of motion and gait within normal limits. (ECF No. 14-14 at 31, 34.) In August 2019, Jensen reported that Botox treatments for spasticity were working well for her. (ECF No. 14-12 at 107.) Jensen's right shoulder symptoms had improved by September. (ECF No. 14-3 at 24 (citing ECF No. 14-12 at 76).) The ALJ further noted Jensen's strength was 5/5 in the bilateral lower and upper extremities and her sensation and reflexes were normal. (ECF No. 14-3 at 19.) The ALJ acknowledged that Jensen's "course of recovery was complicated by a need for a mastectomy due to breast cancer," however,

cancer was a new impairment that was not present prior March 31, 2019, Jensen's date last insured. (ECF No. 14-3 at 19.) In April of 2020, Jensen continued to report benefits from the Botox injections with improved functioning in activities of daily living. (ECF No. 14-15 at 79.)

Jensen points to a treatment record in April 2020 that noted an equinovarus gait treated with a Botox injection and claims the ALJ ignored on-going post-stroke gait impairment. (*Id.* (citing ECF No. 14-15 at 81).) The ALJ did not ignore Jensen's gait. The ALJ discussed Jensen's impairments in detail, including her gait, and referenced numerous specific exhibits. Jensen's physician returned her to work without restrictions while noting her equinovarus gait on right. On examination in July and August, Jensen's gait was within normal limits and she walked without an assistive device. (ECF No. 14-3 at 19.) The ALJ did note that Jensen used a cane when traveling up and down stairs that did not have a railing. (*Id.*) An ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (citing *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). The ALJ reasonably found that Jensen did not meet her burden of showing a disabling impairment that began during the relevant period and lasted for a twelve-month period of time. The ALJ's determination with respect to step two was supported by substantial evidence and will not be disturbed by the Court.

**II.    The ALJ's Alternative Step Five Finding is Supported by Substantial Evidence.**

At step three, the ALJ found that even if Jensen had a severe impairment, none of Jensen's impairments or combination of impairments met or medically equaled any of the listed impairments. (ECF No. 14-3 at 20.) The ALJ found that Jensen had the residual functional capacity (RFC) to perform light work with further postural, reaching, and environmental limitations. (*Id.* at 23-24.) At step four, the ALJ determined Jensen had no work that qualified as past relevant work under the regulations. (*Id.* at 24.) At step five, the ALJ accepted the vocational expert's testimony and concluded that there were a substantial number of jobs in the national economy that Jensen could perform and cited that step five finding as an alternative basis for a finding of not disabled. *(Id.* at 24-25.) Jensen contends that the ALJ's RFC does not rest on substantial evidence and her assessment of Jensen's subjective allegations does not comply with agency regulations.

   **A.    The ALJ's RFC is Supported by Substantial Evidence.**

ALJs are responsible for assessing a claimant's RFC "based on all of the relevant medical evidence and other evidence." 20 C.F.R. §404.1545(a)(3), §404.1546(c); *see Fanta v. Saul*, 848

F App'x 655, 658 (7th Cir. 2021) (emphasizing that an ALJ has the final responsibility for determining a claimant's RFC and is not required to adopt any doctor's particular opinion.) "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

Jensen takes issue with the ALJ's assessment of Dr. Knapp's 2020 medical opinion. (ECF No. 17 at 20.) In this case, Dr. Knapp determined Jensen capable of unrestricted work in July 2019. The ALJ did not adopt Dr. Knapp's later January 2020 opinion because she found that it was unsupported by and inconsistent with the evidence. (ECF No. 14-3 at 21-22.) The ALJ noted that Dr. Knapp's more restrictive assessment stood in contrast to his earlier July 2019 assessment "issued closer in time to [Jensen's] last date insured" and returning Jensen to work with no restrictions. (*Id.* at 22.) Knapp's January 2020 opinion was issued only a couple of months after Jensen's mastectomy, "a condition not in existence at the time of her date last insured." (*Id.*) And, this later opinion was inconsistent with the objective evidence "documenting a good response to treatment with good physical and cognitive function on examination and reasonably good return to [] daily activities." (*Id.*). If the ALJ determines a treating physician's opinion is not well-supported and is inconsistent with the record, the ALJ may reject it. *See Prill v. Kijakazi,* 23 F.4th 738, 751 (7th Cir. 2022) (if the treating physician's opinion is "internally inconsistent – as well as inconsistent with the medical evidence" an ALJ can give the opinion less weight); *Pytlewski v. Saul*, 791 F. App'x 611, 615 (7th Cir. 2019) (upholding ALJ's decision to discount treating doctor's second "extreme" assessment, which was "entirely incompatible" with the doctor's opinion from two months earlier, where the doctor "did not explain the marked change."). The ALJ's decision not to adopt Dr. Knapp's 2020 opinion was reasonable given the record.

**B. The ALJ's Credibility Determination is Not Patently Wrong.**

When determining the existence or extent of a disability, Social Security Ruling (SSR) 16-3p requires ALJs to consider a claimant's "own description or statement of . . . her physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017.) This is a two-step process. First, the ALJ considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. If there is such an impairment, then the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to

perform work-related activities." *Id.* Because an ALJ "is in the best position" to make this credibility determination, reviewing courts will reverse it only if "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009).

The ALJ found that Jensen's underlying impairments could be expected to produce her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence in the record. (ECF No. 14-3 at 18.) The ALJ noted Jensen's function report wherein she stated she could lift two pounds, sit thirty minutes, stand and walk each for five minutes without a break, sit for six hours and stand and walk each for two hours total in a day. (ECF No. 14-3 at 17-18.) The ALJ further noted Jensen's claimed difficulties tending to personal care, preparing meals and completing household chores. (*Id.* at 17.) The ALJ, however, found that Jensen's improvement within six months of her cardiac/cerebrovascular episodes did not support her alleged limitations. The ALJ noted that in a report to a health care provider on July 29, 2019, Jensen stated she was able to drive, cook safely, properly manage her medications, co-manage her family's finances with her husband and participate in several activities outside the house including 4-H and church groups. (ECF No. 14-3 at 23 (citing ECF No. 14-15 at 61).) The ALJ also found that Dr. Knapp's July 2019 unrestricted work release and the state agency medical consultants were inconsistent with Jensen's claims of disabling limitations.

Jensen contends the ALJ used an improper standard in assessing Jensen's subjective standards and takes issue with the ALJ's use of the phrase "not entirely consistent." (ECF No. 17 at 19.) Jensen acknowledges that prior to using the phrase "not entirely consistent," the ALJ recited the correct standard when the ALJ considered symptoms to the extent such symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." (ECF No. 14-3 at 17.) The standards states "in determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *See* 20 C.F.R. §404.1529(a). The ALJ's use of the phrase "not entirely consistent" does not warrant remand. "[E]ven though 'entirely consistent' language is boilerplate, the ALJ's recitation of it is harmless because [she] described (and applied) the correct standard of whether [Jensen's] statements about her symptoms were substantiated by the objective medical evidence and other evidence in the record." *Harris v. Saul*, 835 F. App'x 881, 886 (7th Cir. 2020). Jensen also argues that the ALJ's

statement that "[t]he medical records fail to substantiate fully [Jensen's] allegations" of disabling symptoms and limitations is also error. (ECF No. 17 at 19-20.) Even if the ALJ's use of the term "failed to substantiate fully" was incorrect, use of this boilerplate language alone does not warrant remand where the ALJ correctly stated the correct legal standard elsewhere in the decision and provided specific reasons for her findings. *See Harris*, 835 F. App'x at 886. Here, the ALJ considered the objective evidence along with a number of other factors named in the regulations, 404.1529(c) (2)-(4), such as Jensen's course of treatment and daily activities. The ALJ's analysis is amply supported by the record and Jensen's argument "amounts to nothing more than a dislike of the ALJ's phraseology." *Rice*, 384 F.3d at 371 (declining to overturn ALJ's credibility determination particularly where "credibility determinations are due special deference."). The ALJ's analysis was not "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). Court review is deferential and a reviewing court "will not reweigh the evidence or substitute [the court's] judgment for that of the ALJ." *L.D.R. v. Berryhill*, 920 F.3d 1147, 1151-52 (7th Cir. 2019) (citation omitted).

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Acting Commission of the Social Security Administration is **AFFIRMED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on May 5, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge